**MILLER SHAH LLP**
Kolin C. Tang (SBN 279834)
19712 MacArthur Blvd., Suite 222
Irvine, CA 92612
Telephone: (866) 540-5505
Email: kctang@millershah.com

[Additional Counsel Listed on Signature Page]

*Counsel for Plaintiffs and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THOMAS SNADER, BRAD MARKS, and WAHID SIBOU, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>JNR INCORPORATED,<br><br>Defendant. | Case No.: 8:22-cv-02254<br><br>**CLASS ACTION COMPLAINT**<br><br>Violation of California Invasion of Privacy Act;<br>Violation of the California Unfair Competition Law<br><br>JURY TRIAL DEMANDED |

Plaintiffs, Thomas Snader, Brad Marks and Wahid Sibou, bring this action individually and on behalf of all other similarly situated, and allege as follows:

## I. INTRODUCTION

1. This is a class action lawsuit based on Defendant, JNR Incorporated ("JNR" or "Defendant")'s, surreptitious recording of confidential communications in violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630, *et seq*., and the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*.

2. JNR is a California-based company that describes its business as follows on its web site: "*Operating behind the scenes under the names of our clients tends to keep our name under the radar. For this reason, we are often referred by our clients as their 'best secret weapon.'*" (emphasis added). JNR Website About Page, attached hereto as **Exhibit A** (with the above quote highlighted).

3. While acting "behind the scenes" and "under the radar," JNR surreptitiously recorded thousands of calls without the consent of individual victims on the other end of these calls in a blatant violation of CIPA and the UCL.

4. The named Plaintiffs herein (the "Representatives") assert claims on behalf of themselves and all similarly situated individuals whose calls were recorded by JNR without consent (the "Class").

## II. PARTIES

5. Plaintiff, Thomas Snader, ("Representative Snader") is an individual residing at 704 Sycamore Drive, West Chester, Pennsylvania 19380.

6. Plaintiff, Brad Marks, ("Representative Marks") is an individual residing at 3121 West Brighton Street, Furlong, Pennsylvania 18925.

7. Plaintiff Wahid Sibou ("Representative Sibou") is an individual residing at 1043 North Mollison Avenue, Apt. H, El Cajon, CA 92021.

8. JNR is a Nevada corporation (Nevada Entity # C484-1982) registered in California (California Entity # 1238620). JNR maintains its principal place of business at 19900 MacArthur Boulevard, Suite 700, Irvine, California 92612.

9. The Class (as more fully defined further herein) consists of individuals whose telephone calls with JNR were recorded without their consent.

## III. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2)(A) because the claims relating to the matter in controversy exceed $5 million, exclusive of interest and costs, the proposed Class has at least 100 members, and this is a class action in which certain of the Class members (including the Representatives) and Defendant are citizens of different states.

11. Venue is proper in this judicial District under 28 U.S.C. § 1391 because JNR is headquartered in this District, does business in this District, and many of the wrongful acts and events took place in and emanated from this District.

## IV. FACTS COMMON TO ALL CLASS MEMBERS

12. JNR is in the business of facilitating and administering various programs and communications of its corporate clients, such as Mitsubishi Motors North America, Inc. ("Mitsubishi"), a large automotive company, and other similar businesses (collectively, the "Clients").

13. Acting on its own behalf and on behalf of its Clients, JNR engages in telephone communications with individuals relating to existing or potential relationships between these individuals and its Clients[1].

14. JNR's exact role, including its functioning as an entity separate from its Clients when it acts on their behalf, is purposefully and systemically obscured by JNR and the Clients.

[1] Representatives reserve the right to add certain or all Clients as defendants if discovery and/or further investigation reveals that certain or all Clients culpably participated in JNR's misconduct alleged herein.

15. Such obscurement is part of JNR's business model, and the mission and service it offers to its Clients. In particular, JNR promotes its business as follows on its web site: *"Operating behind the scenes under the names of our clients tends to keep our name under the radar. For this reason, we are often referred by our clients as their 'best secret weapon.'"* Ex. A.

16. Clients engage with JNR for the purpose of obtaining or maintaining their relationship with the members of the Class (the "Relationships").

17. By way of example only, various types of Relationships include automotive manufacturer incentive programs, debit card and bank accounts, reward card accounts, and fund transfers.

18. As part of JNR's "administration" or other involvement in these Relationships, it conducted telephone calls with members of the Class.

19. These calls (a) included a member of the Class (or anyone authorized to participate in such call by such member of the Class), on one side, and a telephone agent of JNR acting on behalf of JNR and/or a Client, on the other side, and (b) dealt with personal and/or confidential matters.

20. For the foregoing reasons, these calls were "confidential communications" as defined under California Penal Code § 632(c).

21. JNR recorded these confidential communications without the consent of the members of the Class.

22. The Representatives, as members of the Class, have claims that are virtually identical to their fellow class members.

## V. THE REPRESENTATIVES' EXPERIENCES WITH JNR

23. Mitsubishi is one of JNR's Clients.

24. Mitsubishi operates a program called "Diamond Rewards" under which it pays incentives to dealer employees for selling Mitsubishi vehicles.

25. As part of the Diamond Rewards program, Mitsubishi and JNR provide program participants (employees of Mitsubishi dealerships) with "Mitsubishi Diamond Rewards" branded debit cards.

26. Mitsubishi engaged with JNR to "administer" the Diamond Rewards program and related inquiries and telephone communications.

27. A phone number on the back of the debit card directs program participants to call JNR's telephone number if they want to discuss either the program or their card account.

28. Representatives Snader, Marks and Sibou participated in the program and were provided with Diamond Rewards debit cards by JNR and Mitsubishi.

29. Over the course of their respective Relationships with JNR and Mitsubishi, Representatives Snader, Marks and Sibou made telephone calls to JNR and/or received telephone calls from JNR, including:

a. Calls with Representative Snader on or about, without limitation, September 27, 2021 and February 11, 2022;
b. Calls with Representative Marks in or about, without limitation, March-April 2022;
c. Calls with Representative Sibou in or about, without limitation, May 2016, August 2017, January 2018 and June 2019.

30. These calls were "confidential communications" as such are defined under California Penal Code § 632(c).

31. These calls were recorded without the consent of the respective Representative.

32. The calls relating to Diamond Rewards continued to be recorded without consent until at least June 22, 2022.

33. On June 22, 2022, the illegal recording of calls was identified and JNR's management was confronted about their call recording practices over the course of several telephone calls.

34. At least some of the calls on June 22, 2022, were recorded by JNR without proper prior notice to or consent of the other participant(s) on these call(s).

35. During these calls, JNR's management repeatedly evaded questions about JNR's call-recording practices and policies.

36. However, some of JNR's rank-and-file telephone operators, only when confronted with a direct question, admitted that the then-ongoing call was in fact being recorded, even though no notice of such recording had been given prior to the caller's question.

37. Within several hours of being alerted that its illegal activity had been identified, JNR altered its systems several times:

a. First, the Diamond Rewards voice prompts were changed to announce that the caller was reaching a non-Mitsubishi vehicle recall program.

b. Several hours later, the voice prompts were changed again to announce that calls may be recorded "for quality assurance".

38. Upon information and belief, JNR has engaged in the same misconduct with respect to other Class members who maintain (or previously maintained) Relationships with Mitsubishi through the Diamond Rewards program, as well as other Class members who maintain (or previously maintained) Relationships with other Clients of JNR through other similar programs.

## VI. TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL

39. Any applicable statute of limitations has been tolled by JNR's knowing and active concealment of its call-recording practices and policies. Though no fault or lack of diligence, Representatives and members of the Class were deceived regarding JNR's call-recording practices and policies and could not reasonably discover JNR's misconduct. As noted above, JNR refused to disclose its call-record practices and policies even when directly questioned about them.

40. Representatives and members of the Class did not discover and did not know of any facts that would have caused a reasonable person to suspect that

JNR's call-recording practices and policies included surreptitiously recording their calls with JNR's representatives.

41. Similarly, at least some Clients, such as Mitsubishi, have tried to actively conceal information about JNR's recording of telephone calls.

42. At all times, JNR is and was under a continuous duty to disclose to Representatives and members of the Class its call-recording practices and policies, including the recording of their calls with JNR.

43. JNR knowingly, actively, and affirmatively concealed the facts and practices alleged herein, and Representatives and members of the Class were reasonably deceived by such concealment.

44. Representatives and members of the Class had no reason to believe their rights were violated when they called JNR, as neither the automated messages nor the live representatives alerted the callers that their calls were recorded.

45. For all of these reasons, all applicable statutes of limitations have been tolled based on the discovery rule and JNR's fraudulent concealment, and JNR is estopped from relying on any statute of limitations in defense of this action.

46. Representatives bring this lawsuit, both individually and as a class action, on behalf of similarly situated persons affected by JNR's misconduct pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3) and seek to represent the Class defined as follows:

> All individuals with whom JNR and/or its agents engaged in telephonic communications on JNR's behalf and/or on behalf of JNR's clients prior to December 16, 2022, with said communications recorded by JNR without notice.

Excluded from the Class are Defendant, as well as Defendant's affiliates, employees, officers and directors, and the Judge to whom this case is assigned. Plaintiff reserves the right to amend the definition of the Class if discovery and/or further investigation reveal that the Class should be expanded or otherwise modified.

47. **Numerosity/Impracticability of Joinder:** There are so many members of the Class that joinder of all members is impracticable. JNR's call-recording practices and policies, including surreptitiously recording their calls, goes back many years and applied to countless calls that JNR made or received on behalf of its many Clients, which include many large national corporations. JNR confirmed that it never deletes any data and has an archive containing historic records and recordings of its calls. Accordingly, Representatives estimate that there are, at the very least, many thousands or tens of thousands, if not hundreds of thousands, of members in the Class, who are readily identifiable from the information and records in JNR's possession, custody, or control, such as the recordings at issue, call logs, customer databases, etc.

48. **Commonality and Predominance**: There is a well-defined community of interest and common questions of law and fact that predominate over any question affecting only individual members of the Class. These common legal and factual questions, which do not vary from members of the Class and which may be determined without reference to the individual circumstances of any members of the Class, include, but are not limited to, the following:

a. Whether JNR's call practices and policies included recording the calls it made or received on behalf of its Clients;

b. Which period(s) of time JNR engaged in its practices and policies of recording calls it made or received on behalf of its Clients without disclosing such recording;

c. Whether JNR knew, or should have known, that the Representatives and members of the Class were unaware that their calls with JNR were recorded;

d. Whether JNR had a duty to disclose that it was recording such calls to the Representatives and members of the Class;

e. Whether JNR disclosed, failed to disclose, or concealed that it was recording such calls to the Representatives and members of the Class;

f. Whether JNR's call practices and policies violated CIPA;

g. Whether JNR's call practices and policies violated the UCL;

h. For any periods during which JNR did disclose that it was recording calls for a specific purpose, whether such disclosure was truthful and adequate for the callers' consent to be valid under CIPA and the UCL.

i. The extent to which the relationship between JNR and its Clients makes the Clients liable for JNR's wrongdoing;

j. Whether Representatives and members of the Class are entitled to damages, statutory damages, restitution, equitable relief, and/or other damages and other relief, and, if so, the amount and nature of such relief.

These questions of law and fact common to the Representatives predominate over any questions affecting only individual members of the Class.

49. **Typicality and Adequacy:** the Representatives' claims are typical of the claims of the members of the proposed Class, and the Representatives will fairly and adequately represent and protect the interests of the proposed Class. The Representatives' counsel are experienced in class actions and complex litigation.

50. **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for members of the Class to prosecute their claims individually. The litigation and trial of the Class-wide claims are manageable.

51. Furthermore, JNR has acted on grounds that apply generally to the Class, so that corresponding declaratory relief is appropriate respecting the Class as a whole.

52. The Representatives are also unaware of any existing litigation concerning these or similar allegations.

**COUNT I**
**Violation of the California Invasion of Privacy Act**

53. The foregoing averments are incorporated herein by reference.

54. CIPA prohibits the recording of a confidential communication without the consent of all parties to that communication. Cal. Penal Code § 632(a).

55. CIPA also provides for a civil action for persons injured by a violation of the chapter. Cal. Penal Code § 637.2.

56. It is not a necessary prerequisite to such a civil action that a plaintiff has suffered, or been threatened with, "actual" damages. Cal. Penal Code § 637.2(c).

57. CIPA provides for damages of the greater of 1.) five thousand dollars ($5,000) per violation, 2.) three times the amount of actual damages, if any, sustained by the plaintiff. Cal. Penal Code § 637.2(a).

58. Here, JNR illegally recorded the Class members' calls without their consent.

59. These communications between the Class and JNR were confidential communications, in particular because they involved sensitive personal and/or financial information of the caller.

60. The Class members were not warned at the outset of their calls that the calls would be recorded.

61. As such, each Class member is entitled to, at a minimum, $5,000 in statutory damages.

**COUNT II**
**Unlawful, Unfair, and Fraudulent Business Practices in Violation of California Business and Professions Code §§ 17200, *et. seq.***

62. The foregoing averments are incorporated herein by reference.

63. The UCL defines unfair competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.

64. JNR violated the UCL by surreptitiously recording its confidential communications with the Representatives and members of the Class.

65. JNR's surreptitious recording of such communications constitutes an unfair business practice within the meaning of the UCL. The Representatives and members of the Class have suffered a substantial injury from, among other things, JNR's invasion of their privacy, which they could not have reasonably avoided, and received no benefit from such intrusions.

66. JNR's surreptitious recording of such communications also constitutes an unlawful business practice within the meaning of the UCL. Such misconduct is a violation of CIPA, as well as the Representatives and Class members' rights to privacy under common law.

67. JNR's surreptitious recording of such communications further constitutes a fraudulent business practice. The Representatives and members of the Class were deceived by JNR as to the nature of such communications as JNR did not disclose that it was recording those communications. JNR knew or should have known that the Representatives and members of the Class were not aware and had no reasonable basis to be aware that JNR was recording their confidential communications.

68. The injuries suffered by the Representatives and members of the Class greatly outweigh any potential countervailing benefit to consumers or to competition (if any). The injuries suffered by the Representatives and members of the Class should have or could have been reasonably avoided.

69. JNR profited in the course of its violations of the UCL, as the revenues it received from its Clients are directly traceable to the calls with the Representatives and members of the Class that it surreptitiously recorded.

70. As such, JNR is liable to the Representatives and members of the Class for restitution and/or other equitable remedies.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, as Representatives for the Class, respectfully request that this Honorable Court enter judgment in their favor and against JNR by:

a. Certifying this action as a class action pursuant to Federal Rule of Civil Procedure 23, declaring that the Representatives are proper Class representatives, and appointing the Representatives' attorneys as class counsel;

b. Adjudging and declaring that JNR's acts, omissions, and practices alleged herein violated CIPA;

c. Adjudging and declaring that JNR's acts, omissions, and practices alleged herein violated the UCL;

d. Awarding the Representatives and the other Class members statutory damages under CIPA in an amount to be determined at trial;

e. Awarding the Representatives and the other Class members restitution and/or other equitable relief under the UCL in an amount to be determined at trial;

f. Awarding the Representatives and the other Class members any other statutory, punitive, and exemplary damages to the fullest extent permitted by law;

g. Awarding the Representatives and the other Class members the costs and disbursements of this action, along with reasonable attorneys' fees and expenses, to the extent permitted by law;

h. Awarding pre- and post-judgment interest at the maximum legal rate; and

i. Granting all such other relief as the Court deems proper.

Dated: December 16, 2022

By: */s/ Kolin C. Tang*

Kolin C. Tang (SBN 279834)
MILLER SHAH LLP
19712 MacArthur Boulevard, Suite 222

Irvine, CA 92612
Telephone: (866) 540-5505
Email: kctang@millershah.com

George Bochetto
(*Pro Hac Vice* application forthcoming)
Ryan Kirk
(*Pro Hac Vice* application forthcoming)
BOCHETTO AND LENTZ, P.C.
1524 Locust Street
Philadelphia, PA 19102
Telephone: 215-735-3900
Facsimile: 215-735-2455
Email: gbochetto@bochettoandlentz.com
rkirk@bochettoandlentz.com

James C. Shah (SBN 260435)
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Email: jcshah@millershah.com